May it please the court Ben Flowers on behalf of Lawrence Thompson I'll do my best to reserve two minutes for rebuttal. The court in this case is required to view the facts in the light most favorable to Mr. Thompson and viewed in that light the facts establish that officer Copeland violated his clearly established Fourth Amendment rights in at least three ways. First he performed a search that he labeled an inventory search that was motivated entirely by investigatory intent. Second that search failed to comply with the governing inventory search procedures and finally his arrest involved the use of excessive force. So I'll begin with the first point. It's undisputed in this case that searches motivated entirely by investigatory intent do not come within the inventory search exception to the warrant requirement of the Fourth Amendment and there were various facts here that could lead a jury to conclude that this search was motivated entirely by investigatory intent. The first and I think the most important is that officer Copeland did not even begin to record an in this case. That's particularly telling because he himself said that the entire car was cluttered including the front of the car that he began by searching the front of the car and he didn't find the gun until he got to the back of the car. Well if all that's true he should have had a fairly lengthy inventory by the time before he even found the gun issue. Based on that a jury could find that the real reason for the search the only reason was his investigatory intent. What happened in state court what happened to the state court charges? The state court charges were thrown out because the judge concluded that under state law the the search and the stop itself were pretextual. Washington law unlike the Fourth Amendment prohibits even pretextual stops. I thought that might have been your first point but go ahead I don't I don't mean to interrupt I just want to make sure. I just want to clarify that it stopped at the stop with the state court right? No the state court also found that the inventory search itself. Well because that followed the stop correct? The pretextual stop. The pretextual stop. The pretextual stop but also said that the inventory search itself was nothing more than an excuse to look for evidence. So the state court did make that finding. In addition to the inventory sheets missing you have officer Copeland shifting explanations. He first said he searched the car because it was impounded. It wasn't until the district court said that's not enough I need an inventory search policy that he claimed to have searched the car based on such a policy. A jury could reasonably infer from that that the real reason he did this was something else that he was grasping at straws to try to reason to justify. Well what where does the Burien ordinance figure in which basically says if you impound a vehicle then you must do a search. How does that fit in? It's like it's slightly different than that the Burien ordinance says that you must impound the car after these arrests. It's more nuanced than that because Washington's Constitution requires that you consider reasonable impoundments and that would of course trump the local ordinance. It's the Sheriff Department's policy that requires the search. The search. After an impoundment and that was never mentioned until after he lost the first motion to dismiss. Again a jury could find they don't have to but they could find that that suggests that the real motive was something else. Was it was in fact investigatory. Finally he conceded that he pulled Thompson over for pretextual reasons that he saw stuff during the stop that led him to believe that there may have been evidence of some more significant crime in light of the lack of an inventory and shifting explanations and that a jury might reasonably conclude that the real reason for the search the only reason was investigatory intent. But even moving beyond investigatory intent this it's again undisputed that the law is undisputed that inventory searches must comply with the inventory search procedures by which they're governed. The one here did not for various reasons. Number one he didn't there's at least evidence that he didn't even know the policy existed and you cannot perform an inventory search pursuant to a policy that you don't know exists. In addition to that this court is held in the United States v. Wanless and has applied in cases since like United States v. Maddox. Let me just stop there. You might not know it existed but if you complied with it would it then matter? It would not. Okay. Because the reason is it has to be pursuant to and a search is not pursuant to if you don't know it exists and taken from the perspective of a reasonable officer as far as he knew if he doesn't know about the policy and as far as he knows he's conducting a search not governed by a policy at all and that's plainly unconstitutional under cases like Colorado v. Bertine. Note 6. How much time between the actual stop and the search? I don't think that's in the record, Your Honor. Okay. So finally it has to comply as I noted it has to comply with state law that's implicitly incorporated into the policy itself. Washington state law requires you consider reasonable alternatives to impoundment. The state court here found that he didn't do that and reasonably so I think a jury could make the same determination. In addition to that the policy itself forbids exploratory searches and if I'm not mistaken Officer Copeland does not even argue in his brief that the search wasn't pretextual in violation of that policy. Finally I'll move on to excessive force. The critical case here is Robinson and that in that case this court held that a man who was accused of using a shotgun to shoot two dogs killing one of them his Fourth Amendment rights were violated when the police pointed a weapon at his head while he was approaching them calmly. It's sorry that they held that that violated his case follows a fortiori from the facts of that case. For one thing unlike Mr. Robinson who was believed to be unarmed Mr. Thompson was known to be unarmed because he had already been patted down. Unlike Robinson who was approaching officers Copeland was sitting calmly on the bumper of a police cruiser under the supervision of another armed officer. Can you go to the facts that are tough for you? It's late at night right and there was a gun and by the time Officer Copeland did this action that's disputed he was aware that your client had a prior firearms conviction right? Those are the ones that are tough for you. Admittedly. And the guns how many feet away? What's the undisputed number is it 15? 10 to 15 somewhere in that range. 10 to 15 so what about that? Can you cut to that chase? So even if I agree that those are the most problematic facts for us but still under Robinson he was three to six feet away when they pointed the guns at his head not 10 to 15. They didn't know that he was unarmed. Did Robinson have a prior firearms conviction? Not to my knowledge. But the earlier report he approached there'd been a shooting of a dog and he approached and said I'm the one involved in that shooting. That's correct. So they had that. They did know that and in addition to all of this even if you're we're not disputing that it was reasonable to unholster the gun and use the low ready alternative which Officer Copeland himself claims he used and in green for example this court held that the availability of that alternative makes the pointing of gun at someone's head constitute excessive force and that same reasoning applies here even given all of the facts that your honor noted. Finally I want to briefly note that even if you find that the if you find there may be a Fourth Amendment violation here but that it's not sufficiently clearly established so that Officer Copeland gets qualified immunity that would not get the municipality off the hook. The reason is municipalities do not get qualified immunity and here Thompson alleged that the municipality engaged in a failure to supervise that led to the deprivation of his rights such that those causes of actions have two elements first constructive or actual knowledge second causation. With respect to constructive knowledge he alleged that they failed to supervise specifically that they failed to investigate incidents involving misconduct with firearms and excessive force. With respect to causation he expressly says that the policy resulted in his injury and that would be more than enough to get that that claim passed motion to dismiss and the district court erred in concluding otherwise. Unless there are questions. I would thank you. Good morning. Endel Kolda for all defendants in this matter. Deputy Pete Copeland should enjoy qualified immunity because Lawrence Thompson did not have a without an inventory search or to be taken into custody arrested for a serious felony offense while a loaded revolver was nearby and accessible. It's Thompson's burden to show that he had a clearly established right and he hasn't done that. Counsel so so if we can cut to the chase again forgive me for interrupting but I'm looking at Robinson and you both cite that this case extensively it's a 2002 en banc decision and it starts at the first line in the en banc in order to clarify the law. You've read it. Yes. It's pretty rare that we have that statement right up front so what was unknown? Robinson's a different case. I'm not saying it couldn't be a gun pointing case couldn't be clearly established under certain circumstances but Robinson wasn't being arrested. Let's hear your best argument about distinguishing Robinson if we could. Robinson was an investigation. Robinson was clearly unarmed. The report was he'd had a shotgun but when he approached he wasn't carrying a shotgun that was obvious. Still had been patted down. He had been patted down you know that's an initial check you could still be armed after you're patted down but the revolver was still the distance between you and me. That's where I think you have to he could have he might have but the fact is the revolvers in the car correct ten to fifteen feet away right over there he's been patted down and they have him under control he's not handcuffed yet correct there's two officers right correct is there any evidence here that at the point when they be when he points the gun that he is armed he is or has he is close to a weapon no yeah is does he have any evidence that he is armed at that time no but he's within with he's within seconds of a loaded revolver that's really the kind of the crux here is proximity and potential action yes and your honor it's important to remember that although there were two police officers here this is not a case of overwhelming force overwhelming police presence deputy Copeland weighed about 200 pounds was five seven I believe the officer Thompson was six feet 265 pounds and when you're moving a large person and you got momentum going on the whole point is to not even get into that situation there's an information problem when you're taking somebody into custody a lot of situations that start out as a traffic stop and a felony arrest that seem like they're going well don't end up going well and the statistics bear that out so you don't want him to even take the take take a chance and go for the gun and so the gun is displayed it wasn't just displayed that's the point the opposing counsel acknowledges that it would have been okay to unholster the gun yeah the problem is the allegation is the gun was pointed his head I understand that and I understand for purposes of this appeal we have to we have to accept that as established yes nevertheless it was very brief and it achieved its desired effect and and to get back to your honors earlier question about the distinctions between Robinson remember Robinson approached that point it was just an investigation we have already PC for a serious felony arrest a gun crime with knowledge of a prior gun offense not the case in Robinson secondly it was pointed at his head at very close distance and then he was 15 to 30 minutes in the record and then released because it turned out he hadn't committed any crimes that's very different than a situation where somebody's being arrested for a felony well this individual it struck me as pretty comparable counsel because he's pulled over for a routine traffic violation immediately apologized there weren't harsh words he apologized for the infraction he was sitting I think as judge McEwen described on the bumper quietly there weren't any of the bells and whistles that we are you know sort of indicators that we often see well it started out as a traffic stop for for infractions it became a misdemeanor arrest and then you had mandatory impound ordinance in under the Berrien municipal code and then an impound search which was good inventory search which was going to happen as soon as the Copeland had some kind of secondary motive in this case at that point when he found the gun it became a felony arrest so yes it started out as a fairly low lower key traffic stop and became a much more serious offense well do you have a timeline I mean we read the record but can you construct from for us from the record that once they discover the gun then they have him over there on the car on the bumper what is our time frame here because your argument is that things could happen in seconds for example they could spring over to the car I guess that's your argument but what kind of time frame are we looking at here to make a judgment the best there's no MDT printout which we would normally use if that had been a primary issue so I can only point to the cert for in the record I can get the ERs if the court wants but essentially so there's no timestamps but in terms of the sequence of events the part that's not clear is how long it took deputy Fitch it to arrive as backup once the decision to arrest but he was called his backup right he wasn't riding along in the car his second car arrived correct okay correct to do an inventory search at this point he's still sitting on the bumper unhandcuffed as he has been the entire time then deputy Copeland starts to do the inventory which he has to do he's compelled to do by the sheriff's office policy he sees some things in the front and of course he's a trained observer so he's going to note that information because he's doing you know he's eventually provides information for a PC cert later on after he realizes there's PC for a for a gun crime then he sees the bag in the back and the floor floorboard and the behind the passenger seat with the handles up he sees the revolver pointing up and as the court knows the revolver you can see whether it's loaded he's like there's a gun are you asking us forgive me for interrupting are you asking us it seems like you're relying on the on the prior firearms offense in terms of the escalation that you've described prior firearms conviction yes and the presence of this gun 10 or 15 feet away are you asking us to say that those two facts alone would be enough to point a gun at somebody said anytime there's a somebody with a prior felon in possession if there's a gun within 10 or 15 feet an officer is justified in pointing a gun at his head it's an interesting question I would say not not necessarily but I think in this circumstance we're late at night it's also a felony arrest situation I think that is one of the key factors that distinguishes this case from Robinson and any number forgive me but I want to make sure I'm following you I know I'm interrupting but your time so when you say in this situation wouldn't it always be the case that there's a there's PC for for an arrest if there's somebody who's got a prior firearms conviction and there's a gun within 10 or 15 feet that's gonna be your argument it seems to me that's gonna be the government's argument so I'm just wondering if this isn't necessarily the case that you're asking us to say that those two facts alone would be enough to warrant the use of the threat of lethal force I think if it was a misdemeanor arrest it's not a strong a case in this case we had a felony arrest and we knew it wasn't his first time so I think it does make it more serious because at that point deputy Copeland is looking kind of for is that mean the answer to my question is yes but that would be enough to use lethal force it might be your honor yeah maybe I guess the question is whether in a circumstance like that the officer can be second-guessed for assuming the worst well we would we would argue no give a particularly given the outcome in this case I mean the handcuffing took place he was asked to get on the ground he was handcuffed there was no injury to mr. Thompson that's undisputed in the record so actually this arrest ended up going off without a hitch and that's good but at the time that the gun is that the deputy points his gun that's an unknown and he doesn't have that information and he doesn't know if mr. Thompson is going to cooperate with being taken into custody for yet another felony and I would point out the record does show that in fact this was mr. Thompson's fifth or sixth gun possession crime although admittedly deputy Copeland didn't know it was that many offenses at that doesn't matter that he coupled the misconduct with the threat to kill him if he didn't comply well he said if you accept what what Thompson says he said if you move I'll kill you or something along those lines it's might not be the ideal most professional things to say it you know often rough language is used in order to get people to comply with being taken into custody I think this was different if this was a mere investigation I think it was it would be different if it was a minor offense or a misdemeanor it was not it was a traffic stop late at night with a loaded gun present and a serious we ask that you affirm thank you your honor's one brief point and then I can then I can stop the I would just refer your honors to the case the First Circuit decision stamps the city of Framingham I'm not arguing that case is binding or anything like that the reason it's it's useful is because it shows the problems with officers pointing their guns at suspects heads when they don't have a reason to do so in that case the officer was holding an individual at gunpoint he slipped and he killed the man and that is the problem that arises in cases like this that are if that are avoided by simply pointing the gun low and away as he claims to have done so unless there are further questions we ask this one if I could do you dispute that the officer would have been justified in unholstering his gun no displaying it he would have absolutely been justified in doing it so unless there are further questions we ask that you reverse the district court thank you thank you I'd like to thank both counsel for your argument I especially would like to thank mr. flowers for the clients but to the court and also really to opposing counsel so that they have a good brief so I thank you and I also note there's another Michael flowers who's an attorney in Columbus Ohio is there not do you know him okay well maybe you should meet him since you share at least two of the same names all right thank you very much for your argument this morning the case of Thompson Thompson versus Copeland is submitted
judges: Hawkins, McKeown, Christen